**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAVID N. NORTON, SR.,**

               **Plaintiff,**

**v.**                                          **Case No: 6:20-cv-808-LRH**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

               **Defendant.**

_____

**MEMORANDUM OF DECISION**[1]

     David N. Norton, Sr. ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits.   (Doc. 1). Claimant raises two arguments challenging the Commissioner's final decision, and based on those arguments, requests that the matter be remanded.   (Doc. 24, at 21, 26, 43).   The Commissioner asserts that the findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and the proper legal standards were applied, and thus the ALJ's decision should be affirmed.   (*Id.*, at 43).   For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

---

[1]  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.   *See* Docs. 17, 20-21.

## I.    PROCEDURAL HISTORY.

On February 16, 2016, Claimant filed an application for disability insurance benefits, alleging a disability onset date of July 5, 2013.   (R. 100, 173).   Claimant's application was denied, and he requested a hearing before an ALJ.   (R. 101-07).   A hearing was held before the ALJ on December 7, 2018, at which Claimant was represented by an attorney.   (R. 44-86).   Claimant and a vocational expert ("VE") testified at the hearing.   (*Id.*).

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   (R. 16-42).   Claimant sought review of the ALJ's decision by the Appeals Council.   (R. 169-71).   On March 5, 2020, the Appeals Council denied the request for review.   (R. 1-6). Claimant now seeks review of the final decision of the Commissioner by this Court.   (Doc. 1).

## II.    THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   (R. 20-37).[3]   The ALJ found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2018.   (R. 21). The ALJ concluded that Claimant has not engaged in substantial gainful activity since his alleged onset date of July 5, 2013.   (*Id.*).[4]   The ALJ found that Claimant had the following severe

---

[2] Upon a review of the record, the Court finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   (Doc. 24).   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.   *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

[4] The ALJ found that "although Claimant's earnings records do not show wages after 2013, and he denied continued work activities at the hearing, his medical records repeatedly indicate that he has continued to work in the family business, apparently including truck driving and working in the cement factory making cement blocks."   (R. 21)

impairments: cardiomyopathy, chronic pain status/post L2-L5 fusion and sacroiliac joint dysfunction, obesity, and pulmonary fibrosis.   (R. 22).   The ALJ further found that Claimant suffered from the following non-severe impairments: type II diabetes mellitus, essential hypertension, high cholesterol, and history of depression.   (*Id.*).   The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. 24).

The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5] except that Claimant:

> can lift 20 pounds occasionally and 10 pounds frequently; stand and walk for a total of 6 hours per day and sit for 6 hours; occasionally climb stairs and ramps; never climb ladders, scaffolds, and ropes; and occasionally balance, stoop, kneel, crouch, and crawl.   The claimant would need to avoid concentrated exposure to temperature extremes, humidity, respiratory irritants, vibrations, and unprotected heights.

(R. 26).

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform past relevant work, which included work as a truck driver, airbrakes mechanic, block maker, and cleaner.   (R. 34-35).   However, the ALJ found, upon consideration of the claimant's age, education, work experience, and RFC, that Claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs

---

(citing Ex. 3F/5; 6F/2; 18F/10; l7F/l; 1 1F/1; 9D; 10D; testimony).   However, the ALJ found that it was not necessary to determine whether these work activities constitute disqualifying substantial gainful activity (SGA) because, "whether or not the claimant worked at the SGA level, there exists a valid basis for denying the claimant's application."   (*Id.*).

[5] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

existing in significant numbers in the national economy, such as auto service writer and rental car delivery driver.   (R. 35-36).   With regard to transferability of skills, the ALJ found that despite the VE's testimony that Claimant would potentially need to learn to do sales claims and basic sales skills, and that it would not be a totally simple transition, Claimant also testified to participating in the family business that includes a hardware store and delivery to residential customers, and would therefore have also had some interaction to establish a background in customer service.   (R. 36). The ALJ further found that in the alternative, even if Claimant did not have transferable skills, Claimant would be able to perform the requirements of representative occupations such as cashier, hotel housekeeper, and dispatcher.   (R. 36-37).   Accordingly, the ALJ concluded that Claimant was not disabled from the alleged disability onset date through the date of decision.   (R. 37).

## III.    STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may

- 4 -

not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error: (1) that the ALJ did not fulfill her duty to fully and fairly develop the record; and (2) the ALJ did not appropriately evaluate the medical opinions of Eric A. Schreiber, PA-C, treating physician P. Jeffrey Lewis, M.D., consultative examiner Michael Rosenberg, M.D., and non-examining state agency consultant Mark Bohn, M.D.  (Doc. 24, at 22, 30-34).  The Court will address each alleged assignment of error in turn.

### A.   Failure to Fully and Fairly Develop the Record.

"[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).   Nonetheless, the ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).[6]   The Social Security regulations provide that the Commissioner will develop a claimant's medical history for at least 12 months preceding the month in which a disability application is filed. *Ellison,* 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)); *see also* 20 C.F.R. § 416.912(b)(1) ("[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a

---

[6]   The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995).  Here, however, Claimant was represented by counsel during the administrative proceedings. *See* R. 44.

reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). Before the court will remand a case for further development of the record, however, there must be a showing that the ALJ's failure to develop the record led to evidentiary gaps that resulted in unfairness or clear prejudice. *Graham*, 129 F.3d at 1423 (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).

Here, Claimant asserts that the ALJ had a duty to obtain treatment notes from Shinglehouse Medical Center ("Shinglehouse"), Claimant's primary care providers, upon realizing that the notes were missing from the record. (Doc. 24, at 23). Claimant represents that he notified the Commissioner "early on" that Eric Schreiber, PA-C of Shinglehouse was one of his treating providers. (*Id.*) (citing R. 202).[7] Claimant further represents that he listed Susan Silvas of Shinglehouse as a treating source on his Appeal Disability Report, and that he again listed Susan Silvas[8] and Dr. A. Ramani Arya, M.D., also of Shinglehouse, as his treating sources on the "Claimant's Recent Medical Treatment" form in preparation for the hearing. (*Id.*) (citing R. 220, 245). Thus, Claimant argues, "the Commissioner had early notice and every opportunity" to obtain the records. (*Id.*). Claimant contends that he was prejudiced by the ALJ's failure to obtain the records from Shinglehouse for three reasons: 1) the ALJ gave the opinion of PA Schreiber little weight in part due to the missing records, 2) Claimant testified that he had been a patient of Shinglehouse for 16 years, and "[s]uch a lengthy treatment record by the primary care providers was very important in this case in assessing whether [Claimant's] allegations were consistent with the medical records, as well as whether PA Schreiber's opinions were supported by the records," and

---

[7] The record Claimant cites is from a Disability Report- Adult form, dated April 6, 2016. (R. 198-205). On the form, Claimant lists PA Schreiber as one of his medical providers. (R. 202).

[8] It is not clear from the record or from the Joint Memorandum what Susan Silvas's credentials are.

3) the records were important in determining whether "the neurosurgeon's opinion about [Claimant's] inability to perform even sedentary work was supported by other evidence."  (*Id.*, at 22).

In response, the Commissioner points to the following exchange between the ALJ and Claimant's counsel during the hearing:

> ALJ:      Okay.  All right.  So, the cardiology records are in the file through October 9th of 2018.   We've also got a couple of neurosurgery visits with Dr. Lewis and then we've got a form filled out here from an Eric Schreiber and I don't know who Eric Schreiber is.  So, counsel, is there anything that's outstanding?
>
> ATTY:     No, Your Honor.   There is not . . . .
> …
>
> ALJ:      … I'm just trying to determine whether or not we have all of the updated records; that's all I'm doing.
>
> ATTY:     Oh, sure.   You do.   Yeah.
>
> ALJ:      Okay.   All right.   Thank you.
>
> …
>
> ALJ:      … Any objection to anything that's currently in the file?
>
> ATTY:     No, Your Honor.

(R. 48-50).   The Commissioner argues that any error the ALJ may have made in failing to obtain the medical records was invited by the representations made by Claimant's counsel at the hearing that the record was complete.   (Doc 24, at 25).

The Court agrees with the Commissioner.   The Eleventh Circuit has held that where the claimant's counsel specifically represents to the ALJ that the record is complete, the ALJ does not err by failing to obtain additional evidence.  *Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) ("The ALJ…specifically asked [the claimant] if he had any additional exhibits, and

his attorney replied that the record was complete.   Thus, any alleged error the ALJ may have made

in not obtaining more recent medical records was invited." (citing *Ford ex. rel. Estate of Ford v.*

*Garcia,* 289 F.3d 1283, 1293-94 (11th Cir. 2002))).[9]   *See also Hernandez v. Comm'r of Soc. Sec.*,

No. 6:16-cv-1671-Orl-41GJK, 2017 WL 8134873, at *3 (M.D. Fla. Sept. 18, 2017), *report and*

*recommendation adopted*, 2018 WL 1152296 (M.D. Fla. Mar. 5, 2018) (rejecting argument that

ALJ failed to develop the record where Claimant's attorney answered "No, Your Honor" when the

ALJ asked during the hearing if there was any further evidence related to the claim but not in the

file).   Therefore, any alleged error by the ALJ in failing to develop the record was invited by

Claimant's counsel, and thus does not warrant reversal.   *Larry*, 506 F. App'x at 969; *Hernandez*,

2017 WL 8134873, at *3.

     Claimant also has not sufficiently demonstrated that he was prejudiced by the absence of

these records.   The simple fact that medical evidence is missing from the record before the ALJ

does not rise to the level of prejudice.   *See Carey v. Berryhill*, No. 5:17cv100/EMT, 2018 WL

2972346, at *7 (N.D. Fla. June 13, 2018).   Rather, the missing records must be relevant to the

claimant's claim of disability, "such that they might sustain the contention of an inability to work."

*Id.* (citing *Brown*, 44 F.3d at 935-36).   As the Commissioner argues, Claimant's contentions with

respect to prejudice are largely speculative.   (Doc. 34, at 26).   Claimant does not state that any

particular records from Shinglehouse exist, nor does he identify what information is contained in

those records that would support his claim of disability.   *See Jones v. Astrue*, 691 F.3d 730, 734-35

(5th Cir. 2012) (claimant's assertion that additional records might exist was not enough to support

remand); *see also Carey*, 2018 WL 2972346, at *7 (noting that claimant failed to describe the dates

---

[9] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.   *See* 11th Cir.
R. 36-2.

or contents of the missing records or explain how or why they would have caused the ALJ to reach a different decision, and thus claimant failed to establish prejudice).   Thus, the Court rejects Claimant's first assignment of error.

B. The ALJ's Evaluation of the Medical Opinions of Record.

Claimant's second assignment of error focuses on the ALJ's consideration of the opinions of four medical sources: (1) treating physician Dr. Lewis, (2) PA Schreiber, (3) consultative examiner Dr. Rosenberg, and (4) non-examining state agency medical consultant Dr. Bohn.   (Doc. 24, at 26-34).   The Court will address each source in turn.

An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   At the fourth step of the sequential evaluation process, the ALJ must determine Claimant's RFC.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case."   *Id.* (citations and quotations omitted).

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources.   *See* 20 C.F.R. § 404.1545(a)(3).   The ALJ must consider a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   *Id.* § 404.1527(c).[10]   "These factors apply to both examining and non-

---

[10]   Although the SSA regulations have been amended effective March 27, 2017, the new regulations apply only to applications filed on or after that date.   *See* 20 C.F.R. § 404.1520c.   Because Claimant filed his application for

examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. § 404.1527(e)).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1241).

However, the opinion of a non-treating physician, such as one who examined the claimant on only one occasion, is generally not entitled to any particular deference. *See Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (opinion of one-time examining, non-treating physician not entitled to great weight (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987))). Regardless, the ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight may prevent the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id.*

    i. *Dr. Lewis*

Claimant first takes issue with the ALJ's consideration of treating physician Dr. Lewis's opinions, arguing that the ALJ should have given the opinions "controlling weight, or at a minimum, great weight." (Doc. 24, at 30). Claimant discusses two opinions from Dr. Lewis. The first is an

---

benefits prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 govern here.

August 19, 2013 letter, in which Dr. Lewis opined that the percentage of Claimant's temporary impairment was 100%, and that Dr. Lewis was placing Claimant on "100% total disability due to the repetitive work injury." (R. 314-15). Dr. Lewis further opined that Claimant "cannot work in any capacity, even sedentary work." (R. 315). Dr. Lewis also noted in the letter as follows:

> As you know, [Claimant] underwent a lumbar fusion on two separate occasions. The L2-4 segments were done on 01/21/2013 and L4-5 was done on 12/08/2011. Prior to this he had a laminectomy at L4-5 on 05/29/1998. He is having severe ongoing back as well as leg pain and with any type of work at his business his back pain is significantly exacerbated.
>
> I reviewed a CT scan today. His fusion looks to be quite good at L2-3, L3-4 and L4-5. The pedicle screws do not seem to bother him, it's really the heavy work and normal activities of daily living that exacerbates his pain.

(R. 314-15). The second opinion, which the Court discusses in more detail below, is from an August 29, 2018 letter, in which Dr. Lewis opined that Claimant is "to remain totally disabled and unable to work." (R. 695). The August 2018 opinion is accompanied by office notes from Claimant's examination on that date. (R. 696-97). The ALJ gave both of Dr. Lewis's opinions "very little weight." (R. 33).

### 1. August 2013 Opinion

With respect to the August 2013 opinion, the ALJ afforded it "very little weight" because "this conclusion appears to have been based entirely upon the claimant's self-report" and the records "do not reflect physical examinations or objective findings to account for the increase from 0% disability to 100% disability over the course of two months, and the probative value of this is also minimal, as it was noted to be a temporary finding." (R. 29). The ALJ further noted that Dr. Lewis "offered no explanation as to why the claimant's abilities were being dramatically reduced from heavy to less than sedentary, and also did not offer any additional treatment." (*Id.*).

At the outset, the Court notes that Claimant's arguments with respect to Dr. Lewis's opinions are not a model of clarity, as Claimant does not specify which of his arguments support which of Dr. Lewis's opinions, and Claimant appears to conflate the two opinions. *See* Doc. 24, at 30-32. For example, Claimant first states that Dr. Lewis's opinion—without specifying which opinion he is referring to—was not based solely on claimant's self-report, and points to various medical records from 2013 which he argues support the opinion.   (Doc. 24, at 30-31).   The Court will assume that Claimant is focusing on the 2013 opinion due to the reference to records which predate that opinion.[11]   Specifically, Claimant points to records showing that in 2013, he had decreased range of motion in his lumbar spine and walked with a labored gait.   (*Id.*, at 30 (citing R. 310)).   He also points to records indicating that Dr. Lewis reviewed Claimant's lumbar MRI and found evidence of pseudoarthrosis of lucencies at the L2-3, L3-4, and L4-5 segments, particularly at L3-4.   (*Id.* (citing R. 312)).   Finally, Claimant points to Dr. Lewis's consideration that Claimant had three lumbar fusions.   (*Id.* (citing R. 310)).   Claimant argues generally that these records constitute objective medical evidence to support Dr. Lewis's opinion that Claimant "could not even perform sedentary work, and he was not just relying on [Claimant's] allegations."   (*Id.*).

Claimant's argument is unpersuasive.   First, "there is no requirement that the ALJ specifically refer to every piece of evidence from Plaintiff's medical records in her decision. Rather, the district court must review the ALJ's decision and determine whether the ALJ considered the plaintiff's medical condition as a whole and also determine whether the ALJ's conclusion, as a whole, was supported by substantial evidence in the record."   *Assenza v. Comm'r of Soc. Sec.*, No. 8:17-cv-857-T-JSS, 2018 WL 2980014, at *5 (M.D. Fla. June 14, 2018) (citing *Dyer v. Barnhart,*

---

[11]   To the extent Claimant is citing to these records as support for Dr. Lewis's 2018 opinion, Claimant is equally unsuccessful because, as discussed below, the ALJ's decision with respect to the 2018 opinion is also supported by substantial evidence.

395 F.3d 1206, 1211 (11th Cir. 2005)).   And that is exactly what happened in this case.   The ALJ considered Claimant's medical condition as a whole, and his decision to afford little weight to Dr. Lewis's opinion is supported by substantial evidence.   (R. 29).   In the same vein, the ALJ did not base his decision solely on Dr. Lewis's reliance on Claimant's self-report, but also discussed numerous medical records which were inconsistent with Dr. Lewis's opinion.   For instance, the ALJ explained that the CT scan discussed by Dr. Lewis in the opinion showed that "fusion looks to be quite good at L2-L5" and that Claimant's pedicle screws did not seem to bother him.   (R. 29 (citing Ex. 1F/10-13)).   The record supports this finding.   (R. 315).   The ALJ also noted that Dr. Lewis did not conduct a physical examination of Claimant during the August 19, 2013 examination date to support his conclusion that Claimant was 100% disabled.   (R. 29).   Again, the record supports this finding.   (R. 314-15).   Thus, the weight the ALJ afforded to Dr. Lewis's 2013 opinion is supported by substantial evidence.   *See Bloodsworth,* 703 F.2d at 1239; *see also Assenza*, 2018 WL 2980014, at *5 (M.D. Fla. June 14, 2018) (rejecting claimant's challenge to ALJ's finding that physician's opinion was based on claimant's subjective complaints and noting that the ALJ's decision to afford the opinion little weight was supported by substantial evidence).

Claimant next argues that it was error for the ALJ to discount Dr. Lewis's 2013 opinion based on Dr. Lewis's increase from 0% disability to 100% disability over a two month period. (Doc. 24, at 32; *see* R. 312-13).   Claimant provides little argument on this point but cites generally to *Symonds v. Astrue*, 448 F. App'x 10 (11th Cir. 2011), and states that the ratings provided by Dr. Lewis were for Claimant's worker's compensation case and calculated under the Florida Uniform Permanent Impairment Rating Schedule ("FUPIRS"), a separate entity than the Social Security disability scheme.   (*Id.*).

Claimant's argument here is unpersuasive.   First, beyond his general citation to *Symonds*, Claimant provides no explanation as to the alleged impropriety of the ALJ noting the shift, without objective evidence in support, between Dr. Lewis's August 2013 opinion that Claimant was 100% disabled and his opinion two months prior that Claimant was 0% disabled.   (Doc. 24, at 32).   And while *Symonds* states that FUPIRS is not the same as the Social Security Act's definition of disability, 448 F. App'x at 13, nowhere does *Symonds* hold that an ALJ errs in relying on that schedule.   And even if it so held, the Court does not read the ALJ's decision here as rejecting Dr. Lewis's 2013 opinion on that basis.   Rather, the ALJ noted discrepancies in Dr. Lewis's prior opinions and records, which is appropriate to consider in determining the weight to afford a treating physician's opinion.   *See Posey v. Colvin*, No. 7:13-CV-01309-TMP, 2014 WL 4829596, at *5 (N.D. Ala. Sept. 29, 2014) (finding that the ALJ correctly rejected the opinion of a treating physician because it was inconsistent with the own physician's records, and the physician did not provide any justification for the inconsistency in the opinion) (citing *Stanley v. Sec. of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ did not err in declining to refer to the [treating physician's] opinion because [the treating physician] originally opined that claimant could perform sedentary work and did not provide any objective medical evidence to support his change of heart."))).   More importantly, as discussed above, the ALJ provided cogent reasons, supported by substantial evidence, for affording Dr. Lewis's opinion little weight which have nothing to do with FUPIRS.   Thus, the Court finds no reversible error with respect to the 2013 opinion.

### 2.  *August 2018 Opinion*

Dr. Lewis's August 29, 2018 letter is quite similar to his August 2013 opinion.   Dr. Lewis stated that Claimant "is to remain totally disabled and unable to work."   (R. 695).   At Claimant's

office visit with Dr. Lewis on August 29, 2018, Dr. Lewis diagnosed Claimant with low back pain,

spinal instabilities in the lumbar region, and muscle spasm of the back, and noted the following:

> [Claimant] is a 52 year old male who has had a lumbar fusion in the past at L2 to L5. The discs above and below the fusion are mildly degenerative at L1-2 and L5-Sl. There is an element of spinal stenosis as well at S1.   He is well decompressed at the segments above.   His lumbar hardware could be causing his residual back pain as well in addition to the chronicity of his pain in general.   He has been undergoing lumbar spine surgery for many years.   He has had multiple surgeries.   His first surgery I know of was in 1998 which involved a lumbar laminectomy at L4-5.
>
> His condition is stable.   He has chronic residual pain that precludes him from returning to any type of work.   He is not even able to do sedentary work.   At this time he is going to apply for Social Security disability.   Certainly I think he deserves this as he is not able to work given him [sic] history of lumbar spine fusion.   He may need further surgery in the future with removal of the pedicle screw/rod systems. No further surgery is recommended at this time.   He will be reevaluated on a PRN basis.   We would be more than happy to see again in the future. He continues to undergo pain management injection therapy.

(R. 696-97).

The ALJ evaluated Dr. Lewis's statements as follows:

> I give very little weight to the opinions of Dr. Lewis, as detailed above and incorporated hereto by reference, as well as his August 2018 statement that the claimant remains totally disabled and unable to work (Ex. 15F/3; 16F/l, 2).   He based this largely upon the claimant's self-report, noting that he "has chronic residual pain that precludes him from returning to any type of work.   He is not even able to do sedentary work.   At this time he is going to apply for Social Security disability. Certainly I think he deserves this as he is not able to work given him (sic) history of lumbar spine fusion" *(id.).*   As detailed above, the claimant generally lacks reliability with regard to his alleged symptoms and limitations, in light of the great disparity between his report of difficulties and objective findings, minimal treatment with large gaps in treatment, lack of compliance, and inconsistent statements particularly with regard to work activities during the relevant time period.   No physical examination appears to have been performed at that time, and at his previous June 2018 office visit with the claimant, the first in nearly 5 years, the claimant's physical findings were limited to "some mild restricted range of motion with extension," some tenderness to palpation over the paraspinal muscles bilaterally, and 4/5 lower extremity strength, with negative straight leg raise testing and normal reflexes (Ex. 13F/l-3).   Dr. Lewis did not consider the claimant's ongoing work activities or generally intact daily activities, nor the claimant's lack of treatment for his back other than his July to November, 2017, pain management, which provided significant improvement in his condition *(id.;* Ex. 18F; 3E; 1A; 6F; 11F/1-8; 18F/9-

13; 8F/l-5).   Finally, whether or not the claimant is disabled is a determination reserved for the Commissioner *(id.)*.

(R. 33-34).

With respect to this opinion, Claimant first argues that the ALJ erred because objective medical evidence—in particular 2017 records from his pain management doctor—supports Dr. Lewis's finding.   (Doc. 24, at 31).   But merely stating that there is evidence in the record to support Claimant's position is not enough to warrant reversal.   *See Bloodsworth*, 703 F.2d at 1239 (prohibiting reviewing courts from reweighing the evidence or substituting their judgment for that of the Commissioner, even if the evidence preponderates against the ALJ's decision); *see also Assenza*, 2018 WL 2980014, at *5.   Here, the ALJ provided several reasons for discounting Dr. Lewis's 2018 opinion, including the lack of reliability of Claimant's subjective reports, that no physical examination was performed at the time of the 2018 opinion, a previous June 2018 office visit included only limited examination findings, and the June 2018 office visit was the first office visit in almost five years.   (R. 33-34).   The ALJ cited Dr. Lewis's physical examination of Claimant at his June 2018 office visit, the physical findings from which the ALJ stated were limited to some mild restricted range of motion with extension, some tenderness to palpation over the paraspinal muscles bilaterally, and 4/5 lower extremity strength, with negative straight leg raise testing and normal reflexes.   (R. 33-34 (citing Ex. 13F/l-3)).   The record supports the ALJ's findings.   (R. 667).   The ALJ further explained that Dr. Lewis did not conduct a physical examination of Claimant during the August 2018 office visit upon which he based his opinion.   (R. 33).   Again, the record supports this finding.   *See* R. 696-97.

Claimant next takes issue with the ALJ's finding that Dr. Lewis's opinion was unpersuasive because it was based largely upon Claimant's self-report, and the ALJ determined that Claimant lacked reliability with respect to his alleged symptoms and limitations (in part because of evidence

- 16 -

that Claimant continued to engage in work activities).   (Doc. 24, at 31 (citing R. 33-34)).

However, the ALJ did not err by discounting Dr. Lewis's opinion on this basis.   *See Long v.*

*Shalala*, 902 F. Supp. 1544, 1547 (M.D. Fla. 1995) ("Because the [ALJ] determined that the

[claimant] was not credible, he deduced that the opinions of her treating physicians were not

credible.   The [ALJ] properly took her credibility into account before evaluating the validity of her

treating physician opinions."   (citing 20 C.F.R. § 404.1527(d)(6))).

Claimant cites to no authority for this argument, but instead speculates that "looking at the

evidence as a whole in this case, it is difficult to believe that [Claimant] was actually employed after

2013."   (Doc. 24, at 31).   Claimant further speculates as to whether his continued work activities

could plausibly be considered employment, noting that he "received no pay for whatever services

he performed," and "the fact that [Claimant] wanted his CDL license returned after having it for 30

years could have more to do with his pride than actual necessity."   (*Id.*, at 31-32).   The Court

cannot and will not find reversible error based on mere speculation.   *See, e.g.*, *Mosley v. Acting*

*Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 743 (11th Cir. 2015) (rejecting as speculative

claimant's argument that ALJ failed to fully develop record on claimant's alleged mental

impairments where claimant stated that she has an intellectual disability because, if tested, her I.Q.

would "likely" be 70 or below); *McHenry v. Berryhill*, 911 F.3d 866, 874 (7th Cir. 2018)

(discounting Claimant's speculative arguments that her medical providers must have misunderstood

her statements that she merely tried to work and was not actually working during the relevant

period).

Thus, for the reasons discussed above, the Court finds no reversible error in the ALJ's

evaluation of both of Dr. Lewis's opinions.[12]

_____

[12] It is also worth noting the ALJ correctly held that Dr. Lewis's opinion in the August 2018 letter that Claimant was "to remain totally disabled and unable to work," *see* R. 695, is a finding reserved for the Commissioner.   (R. 34);

ii.  *PA Schreiber*

Claimant next focuses on the opinion of PA Schreiber, who opined, among other things, that Claimant could walk only two city blocks without rest or significant pain, would need to take 15-minute unscheduled breaks every two hours during an 8-hour work day, could sit and stand/walk for two hours in an 8-hour workday, could occasionally lift less than ten pounds but never lift ten pounds or more, and would need to be absent from work more than four times per month due to his impairments.  (R. 642-43).   The sole argument Claimant makes here is that PA Schreiber's opinion is "very consistent with Dr. Lewis's opinion of less than sedentary work," and the ALJ erred in giving PA Schreiber's opinion "minimal weight" because the ALJ failed to include in the record the PCP records from Shinglehouse.   (Doc. 34, at 33).   Thus, Claimant argues "the proper course for the ALJ was to acquire those records, not reject the long time PCP's opinion."   (*Id.*).   Claimant raises no other issue with respect to PA Schreiber.

Claimant's argument is simply a rehash of Claimant's first assignment of error with respect to the ALJ's duty to develop a full and complete record.   And as explained above, Claimant invited any error when his counsel represented to the ALJ three times that the record was complete.   (R. 48-50).   If the ALJ did not err in failing to obtain missing medical records, the ALJ also did not err in failing to consider those records in weighing the opinion of PA Schreiber.[13]

---

*see* 20 C.F.R. 404.1527(d).

[13]  Moreover, as the Commissioner points out, physician assistants were not considered acceptable medical sources under the regulations in effect at the time Claimant filed his application for benefits.  *See* 20 C.F.R. 404.1502(a)(8).

iii.  *Dr. Rosenberg*

The next medical opinion Claimant addresses is from Dr. Rosenberg, a consultive medical examiner who completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), on September 15, 2016.   (R. 622-27).   The form is several pages long, is in check-the-box format, and provides opinions as to various limitations, such as lifting/carrying restrictions, sitting/standing/walking restrictions, use of hands, use of feet, and postural activities, environmental limitations, and physical impairments.   (*Id.*).   Dr. Rosenberg does not provide any explanation for the opined limitations and impairments, and does not reference any medical records.   Rather, Dr. Rosenberg simply states that Claimant's limitations and impairments are caused by fatigue and back pain.   (*Id.*).

The ALJ found that Dr. Rosenberg's opinions ultimately resulted in an overall limitation of Claimant to less than sedentary work, and gave Dr. Rosenberg's opinions "very little weight" because:   (1) his examination was merely a snapshot of Claimant's functioning; (2) his opinion was not representative of Claimant's longitudinal functioning, and (3) the longitudinal medical records did not support the level of impairment found by Dr. Rosenberg.   (R. 33).

Claimant's argument as to Dr. Rosenberg is confusing at best.   First, Claimant acknowledges that Dr. Rosenberg's opinion issued shortly after Claimant's hospitalization for pulmonary and cardiac issues but notes that Dr. Rosenberg's opinion was based on Claimant's back pain, not heart and lung problems.   (Doc. 24, at 33).   Then, Claimant states that "[t]he ALJ apparently errs in stating that Dr. Rosenberg's opinion was for less than sedentary work," argues that Dr. Rosenberg's limitations "would suggest sedentary work," and that "even at sedentary work, [Claimant] would be found disabled under Grid rule 201.06.   The VE testified that none of [Claimant's] skills would transfer to sedentary work."   (*Id.*).   This is the entirety of Claimant's

argument, and Claimant provides no legal authority to support any of these disjointed statements. This alone would be enough to reject Claimant's alleged assignment of error as it pertains to Dr. Rosenberg.   *See, e.g.*, *Ross v. Comm'r of Soc. Sec.*, No. 6:15-cv-1764-Orl-DCI, 2017 WL 1180004, at *2, n.2 (M.D. Fla. Mar. 30, 2017) (finding claimant's argument waived given the "perfunctory nature" of the argument (citing *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998))).   Moreover, these few sentences do not suggest that Claimant is challenging the weight the ALJ afforded to Dr. Rosenberg's opinion.   And even if Claimant was making such a challenge, as a consultative examiner who has only examined Claimant once, Dr. Rosenberg's opinion is not entitled to any special weight, particularly in light of the ALJ's findings that the opinion is contradicted by other medical evidence of record.   *See Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam).[14]

To the extent Claimant is arguing that the ALJ misinterpreted Dr. Rosenberg's opinion as to sedentary work, any such error would be harmless, specifically where Claimant does not challenge the ALJ's determinations regarding the longitudinal medical records which are inconsistent with Dr. Rosenberg's opinion.   *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding that an ALJ's misstatement of fact is harmless if it does not affect the ALJ's conclusion); *Rhodes v. Astrue*, No. 8:07-cv-18-T-MAP, 2008 WL 360823 at *3 (M.D. Fla. Feb. 8, 2008) (noting that a single erroneous statement by an ALJ alone does not require remand where the ALJ's finding otherwise has strong support).   The Court thus finds no reversible error with respect to the ALJ's evaluation of Dr. Rosenberg's opinion.

---

[14] In any event, the ALJ's decision with regard to Dr. Rosenberg's opinion was supported by substantial evidence.  *See, e.g.*, R. 633-36, 719, 722, 727, 733.

iv. *Dr. Bohn*

Finally, Claimant mentions in one paragraph the state agency medical consultant, Dr. Mark Bohn.  (Doc. 24, at 34).   Claimant does not discuss Dr. Bohn's opinion, but simply argues that the ALJ erred in assigning Dr. Bohn's opinion "great weight," while assigning "very little weight" to the opinions of Dr. Lewis, PA Schreiber, and Dr. Rosenberg.   (*Id.*).   Claimant cites to *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) for the proposition that the opinion of a non-examining, reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an ALJ's decision.   (*Id.*).

As discussed above, the Claimant has not established that the ALJ erred in discounting the opinions of Dr. Lewis, PA Schreiber, and Dr. Rosenberg, and thus the weight given to those opinions is not error.   Further, as the ALJ explained in the decision, Dr. Bohn's opinion is consistent with the evidence of record showing that Claimant's low back pain has shown significant improvement with injection therapy (R. 719, 722, 727, 733) and that Claimant reported weight loss with diet and exercise (R. 633), Claimant's reported daily activities (R. 206-15), and the opinion of Jennifer Hewson, ANP-BC (R. 639-40).   (R. 32-33).   In general, the "more consistent a physician's opinion is with the record as a whole, the more weight an ALJ can place on that opinion."   *Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 932 (11th Cir. 2017).   Thus, the ALJ did not err in giving Dr. Bohn's opinion great weight.   *See id.*, at 934 (finding that ALJ did not err by giving greater weight to the opinion of a non-examining physician than the opinion of a treating physician where the ALJ articulated several reasons independent of the opinions of the non-examining physician for giving treating physician's opinion less than substantial weight (citing 20 C.F.R. § 404.1527(c)(4))); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (concluding that ALJ did not err in giving treating physician's opinion little weight and instead crediting the opinions of the state

agency consultants where the ALJ articulated specific reasons for not giving controlling weight to the treating physician's opinion (it was inconsistent with his own treatment notes, treatment notes of other providers, and the claimant's daily activities), and the opinions of state agency consultants were consistent with the records of the treating physicians).

For the reasons stated above, the Court therefore rejects Claimant's second assignment of error.

## V.      CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.      The final decision of the Commissioner is **AFFIRMED.**

2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on September 24, 2021.

**LESLIE R. HOFFMAN**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Counsel of Record